IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DODSON INTERNATIONAL PARTS, INC.,**

      **Plaintiff,**

      **v.**

**WILLIAMS INTERNATIONAL CO., LLC,**
**d/b/a WILLIAMS INTERNATIONAL,**

      **Defendant.**

**Case No. 2:16-CV-02212-JAR-ADM**

## MEMORANDUM AND ORDER

Dodson International Parts, Inc. ("Dodson") filed case this in 2016, bringing state-law and federal claims against Williams International Co., LLC, d/b/a Williams International ("Williams"), arising from Dodson's purchase of two aircraft engines manufactured by Williams and a subsequent contract between the parties for Williams to inspect and repair the engines. This Court granted Williams's motion to compel arbitration and stay the case in January 2017, and the arbitrator issued her final award in September 2019.

This matter is now before the Court on the following motions: (1) Dodson's Motion to Reconsider the January 31, 2017 Order Transferring the Case to Arbitration (Doc. 63); (2) Williams's Motion to Dismiss (Doc. 52); (3) Dodson's Motion to Vacate/Modify the Arbitrator's Findings of Fact and Conclusions of Law (Doc. 54); and (4) Williams's Renewed Motion for Leave to File Sur-Reply regarding Dodson's motion to vacate or modify (Doc. 62). Dodson requests an evidentiary hearing on its motion to vacate or modify. The motions are fully briefed, and the Court is prepared to rule.[1]

---

[1] Dodson did not file a reply in support of its Motion for Reconsideration, and the deadline for doing so has passed.

For the reasons set forth below, Dodson's motion for reconsideration is denied.  The Court construes Williams's opposition to Dodson's motion to vacate or modify as a request to confirm the arbitral award and, finding no basis for vacatur or modification, denies Dodson's motion to vacate or modify and confirms the award.  Williams's motion to dismiss is denied under Fed. R. Civ. P. Rule 12(b)(3) and denied as moot under Rule Fed. R. Civ. P. 12(b)(6). Finally, Williams's motion for leave to file a sur-reply regarding Dodson's motion to vacate or modify is denied and Dodson's request for an evidentiary hearing is denied.

## I.      Factual and Procedural History

More than three years have passed since this Court's Order granting Williams's motion to compel arbitration.[2]  For the sake of clarity, the Court repeats here the pertinent factual history set forth in that Order and the procedural history of this case since that time.

Dodson is engaged in the business of purchasing airworthy or unairworthy aircraft, aircraft engines, and parts for operation, restoration, repairs, disassembly, inspection, and resale. Williams manufactures and sells FJ44 engines, and maintains Federal Aviation Administration ("FAA")-approved maintenance, repair, and overhaul manuals for the several series of FJ44 engines.

In October 2013, Dodson purchased a Cessna jet with two engines manufactured by Williams after the jet had been through a landing accident in Brazil.  Dodson intended to sell the jet once repaired.  In February 2014, Dodson contacted Williams to request a determination of airworthiness for the two engines and an estimate of the cost of returning the engines to service. Dodson contacted Williams only because Williams's FAA Certified Part 145 Repair Station ("Repair Station") was the only repair facility with Williams-supplied technical information

---

[2] Doc. 19.

necessary to perform the engine testing, disassembly, parts inspection, and reassembly.  Williams

quoted Dodson $9,525 per engine for inspection and to provide an estimate of repair costs to

return them to an airworthy condition.

Dodson signed two contracts authorizing the evaluation and repair estimates on the

engines on March 7, 2014.  Both contracts contained identical arbitration and venue provisions.

The clauses read:

> All disputes arising from or in connection with maintenance
> performed by Williams International shall be submitted to binding
> arbitration held in the County of Oakland, State of Michigan,
> U.S.A., in the English language in accordance with the rules of the
> American Arbitration Association.  Williams International will
> designate the arbitration site.[3]

On April 3, 2014, Williams completed the evaluation and repair estimates for each

engine.  It estimated the combined repair cost for both engines at about $640,000.  Williams

emailed Dodson the estimate for each engine.  Dodson elected not to have Williams perform

work on either engine per the estimate, and Dodson directed Williams to return the engines in a

disassembled state.  Williams stated that it would not return the engines in a disassembled state,

and that it would only return them after they were reassembled as unairworthy to ensure that the

parts were never installed on an aircraft.

During August 2014, Dodson advised Williams that it was reconsidering the repair and

return to service of the engines pursuant to the April 2014 estimate.  Dodson inquired about

using serviceable parts from one engine to repair the other.  Williams told Dodson that it would

be possible to do so and, in January 2015, provided a new estimate of $248,805.99 for repairing

one engine using parts from the other.

---

[3] Doc. 10-1 at 8, 10.

In February 2015, however, Williams informed Dodson that the full authority digital engine controls ("FADECs") were exposed to unknown forces during the crash and were not repairable. The required additional hardware to make the engine airworthy added cost of more than $500,000. And in March 2015, Williams determined the engines were not flightworthy and could not be returned to service at any cost. Williams told Dodson that it would red tag the parts as unairworthy and return them to Dodson.

Dodson sold and Williams shipped one of the engines to a third party. Dodson allegedly failed to pay $3,000 to Williams for storage fees, so the other engine remained at Williams's facility in Michigan. At the time of this Court's Order compelling arbitration, Williams still had the FADECs from both engines and had not produced any parts evaluation criteria or reports concerning the precise condition that it claimed rendered the parts for the engine unserviceable. Williams claimed that it possessed the Instructions for Continued Airworthiness ("ICA"), but it had not made that information available to Dodson.

Dodson filed this action on April 4, 2016, bringing state-law claims against Williams for intentional misrepresentation, breach of bailment and conversion, tortious interference with prospective economic advantage, and tortious interference with contract, and federal claims for unlawful tying arrangements under the Sherman and Clayton Acts, 15 U.S.C. § 1, *et seq.*, as well as for declaratory judgment pursuant to 28 U.S.C. § 2201 concerning Williams's obligation under 14 C.F.R. § 21.50 to provide a complete set of ICA to the initial owner of the engines in question.[4]

On January 31, 2017, this Court granted Williams's motion to stay litigation and compel arbitration under the Federal Arbitration Act ("FAA"), finding that: (1) the Court, not the

---

[4] Doc. 1.

arbitrator, must decide the gateway issue of arbitrability; (2) Dodson's objection to arbitration on the basis of fraud-in-the-inducement went to the validity of the entire contract and should be decided by the arbitrator; (3) the arbitration clause was not unconscionable under Kansas law; and (4) the contract's broad arbitration clause encompassed all counts alleged in the Complaint, including fraud-in-the-inducement.[5]  The Court ordered the parties to proceed to arbitration in accordance with the provisions of the arbitration clause and stayed the case pending arbitration.

Dodson filed its arbitration claim in March 2017 and the arbitrator, Barbara Mandell ("Arbitrator"), was appointed and accepted her oath in April 2017.  The arbitration hearing was set to begin in June 2018.  However, after encountering difficulty obtaining the discovery it sought, Dodson moved in February 2018 to modify this Court's stay order to allow subpoenas to issue out of the District of Kansas to compel third-party witnesses to attend depositions and produce documents.  On March 19, 2018, this Court denied Dodson's motion, noting that by agreeing to arbitrate, Dodson had also agreed to the more limited discovery mechanisms available in arbitration.[6]  The Court's order also noted that if Dodson wished to compel compliance with the Arbitrator's subpoenas, it was required to petition the United States District Court for the Eastern District of Michigan, which is the district court for the district in which the Arbitrator sits.[7]  Dodson did so, apparently with limited success.

After much wrangling over discovery and partially dispositive rulings on motions, the Arbitrator finally heard evidence on Dodson's remaining claims over fifteen days during the weeks of April 8, April 22, and June 3, 2019.  The Arbitrator heard evidence from non-party witnesses on March 11 and April 15, and then allowed Dodson to present rebuttal evidence on

---

[5] Doc. 19 at 6–17.

[6] Doc. 27 at 5.

[7] *Id.*

July 30, 2019.  Although Dodson had moved in the Eastern District of Michigan to compel

certain non-party witnesses to appear before the Arbitrator—and Dodson's objections to a

magistrate judge's recommendation that the requested relief be denied were still pending at the

time—the Arbitrator decided to proceed without those witnesses' testimony.  The parties

submitted their proposed findings of fact and conclusions of law to the Arbitrator on September

4, 2019, and on September 24, the Arbitrator served her 95-page Findings of Fact and

Conclusions of Law and Final Award of Arbitrator ("Award"), resolving all of Dodson's claims

in favor of Williams.[8]  The Arbitrator did not find for Williams on its counterclaim for alleged

accrued engine storage and reassembly fees and denied its request for attorneys' fees.  Thus, the

amount of the award at issue here is zero.

On September 26, 2019, two days after the Arbitrator issued her Award, Williams filed a

Motion to Dismiss or, Alternatively, Motion to Transfer Venue in this Court.[9]  Williams argued

that because the Award resolved all claims, the Court should dismiss this action under Rule

12(b)(6) on the basis of res judicata.  Alternatively, Williams sought dismissal or transfer for

improper venue under Rule 12(b)(3).  Williams argued that although the provisions of the FAA

pertaining to the confirmation, modification, or vacatur of an arbitration award are interpreted as

permissive venue clauses, the traditional factors applied to preferred venue weighed in favor of

the Eastern District of Michigan and, therefore, if the Court determined that dismissal was not

warranted, it should transfer this case to that district under 28 U.S.C. § 1404(a).  On the same

day that it filed a motion to dismiss in this Court, Williams filed an application to confirm the

---

[8] Doc. 53, Ex. 1.

[9] Doc. 39.

Award in the Eastern District of Michigan, and later provided notice of that application to this Court.[10]  Dodson opposed Williams's motion to dismiss.[11]

On December 20, 2019, this Court conducted a telephonic status conference, during which it advised the parties that it did not intend to rule on Williams's motion to dismiss or transfer until the Eastern District of Michigan ruled on Williams's motion to confirm the Award.[12]  Subsequently, Dodson filed a motion to vacate the Award in the Eastern District of Michigan.

On February 2, 2020, the parties filed a joint status report advising this Court that on January 3, 2020, the district judge in the Eastern District of Michigan action issued an order to show cause raising questions about subject matter jurisdiction to hear the parties' motions to confirm and vacate the Award.[13]  On January 8, 2020, Williams responded to that order, conceding that under Sixth Circuit precedent, the Eastern District of Michigan lacked subject matter jurisdiction.[14]  The Michigan district court judge agreed and, on January 9, 2020, dismissed the action for lack of subject matter jurisdiction.[15]

Finding that the factual underpinnings for Williams's motion to dismiss or transfer had changed with the dismissal of the Michigan action, this Court dismissed Williams's motion to dismiss or transfer without prejudice to refiling on February 5, 2020.[16]  Williams promptly refiled its motion the following day, arguing for dismissal on the basis of res judicata; on the

---

[10] Doc. 43.

[11] Doc. 44.

[12] *See* Doc. 48.

[13] Doc. 49.

[14] *Id.* at 2.

[15] *Id.* at 3.

[16] Doc. 51.

grounds that while Dodson's motion to vacate was timely filed in the Eastern District of Michigan, it would be time-barred here; and, alternatively, on the basis of improper venue.[17]

On February 27, 2020, Dodson filed its motion to vacate or modify the Arbitrator's Award in this Court, along with a response in opposition to Williams's renewed motion to dismiss.[18]  In that response, Dodson stated that it also intended to file a motion for reconsideration of the Court's January 31, 2017 Order compelling arbitration but, "due to circumstances beyond counsel's control, which counsel is willing to provide *in camera*, the Supporting brief could not be completed in time to file with this Opposition."[19]  Dodson finally filed its motion for reconsideration on March 18, 2020, more than three years after the Court's Order compelling arbitration.[20]  In response to Dodson's motion to vacate or modify, Williams requests that the Court confirm the Award.

Having recounted the rather tortured procedural history of this case, the Court turns to the pending motions, beginning with Dodson's motion for reconsideration.

## II.   Dodson's Motion for Reconsideration of Order Compelling Arbitration

Dodson seeks reconsideration of the Court's Order compelling arbitration pursuant to D. Kan. Rule 7.3(b), which governs motions to reconsider non-dispositive orders.[21]  Under Rule

---

[17] Doc. 52.

[18] Docs. 54, 56.

[19] Doc. 56 at 2–3.

[20] Doc. 63.

[21] Doc. 64 at 1.  While Dodson brings its motion for reconsideration under D. Kan. Rule 7.3(b) pertaining to non-dispositive orders, there remains some question in this circuit regarding whether an order compelling arbitration is dispositive or non-dispositive.  *See, e.g.*, *Stafford v. Flextronics Int'l USA, Inc.*, No. 14-2254-JWL, 2016 WL 880505, at *2 (D. Kan. Mar. 7, 2016) (declining to decide whether order compelling arbitration and staying case was dispositive order subject to Fed. R. Civ. P. 60 or non-dispositive order subject to D. Kan. Rule 7.3(b) because motion for reconsideration failed under either rule); *Walter v. Mark Travel Corp.*, No. 09-1019-EFM, 2013 WL 5276143, at *4 (D. Kan. Sept. 18, 2013) ("In the Tenth Circuit, the law is not settled whether an order compelling arbitration is non-dispositive or dispositive.") (citations omitted)).

7.3(b), a party may seek reconsideration of a non-dispositive order by filing a motion within 14

days after the order is filed unless the court extends the time.[22]  Dodson filed its motion for

reconsideration more than *three years* after this Court's Order compelling arbitration—and five

months after the conclusion of the arbitration proceeding and more than two months after the

Eastern District of Michigan dismissed the action in which its motion to vacate the Award was

pending.  The Court did not extend Dodson's time to file its motion, nor has Dodson offered any

explanation for this extreme delay.  Thus, the Court finds that Dodson's motion is untimely

under Rule 7.3(b).[23]

Even if the Court were to consider Dodson's motion timely, it would still deny the

requested relief.  Grounds for reconsideration under Rule 7.3(b) include: "(1) an intervening

change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear

error or prevent manifest injustice."[24]  While a motion to reconsider is available where the court

has "misapprehended the facts, a party's position, or the controlling law," such a motion does not

permit a party to "revisit issues already addressed or to advance arguments that could have been

raised in prior briefing."[25]  "A party's failure to present its strongest case in the first instance

---

[22] D. Kan. Rule 7.3(b).

[23] Dodson's motion would also be untimely if the Court's order compelling arbitration was deemed dispositive.  D. Kan. Rule 7.3(a) applies to dispositive motions or judgments and provides that the party seeking reconsideration must seek relief under Fed. R. Civ. P. 59(e) or 60.  Under Rule 59(e), "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment."  Rule 60 requires that "a party seeking relief from an order must file a motion within a reasonable time and in the case of mistake, newly discovered evidence, or fraud, within one year after the entry of the judgment or order."  *Walter*, 2013 WL 5276143, at *4 (citing Fed. R. Civ. P. 60(c)(1)).

[24] D. Kan. Rule 7.3(b).

[25] *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

does not entitle it to a second chance in the form of a motion to reconsider."[26]  Whether to grant

a motion for reconsideration is left to the court's discretion.[27]

Dodson argues that the Supreme Court's April 2019 decision in *Lamps Plus, Inc. v.

Varela*[28] constitutes a change in the controlling law.  In that case, a putative class action, the

Supreme Court "face[d] the question whether, consistent with the FAA, an ambiguous agreement

can provide the necessary 'contractual basis' for compelling *class* arbitration."[29]  The Court

noted that class arbitration is "markedly different from the 'traditional individualized arbitration'

contemplated by the FAA [and] . . . also undermines the most important benefits of that familiar

form of arbitration."[30]  Thus, the Court held that "[t]he statute . . . requires more than ambiguity

to ensure that the parties actually agreed to arbitrate on classwide basis."[31]

Dodson does not explain how *Lamps Plus* changes the law under which the Court

compelled arbitration in this case.  Rather, Dodson expressly states that *Lamps Plus* "reaffirmed"

and "confirmed" the foundational requirement of unambiguous consent to arbitration.[32]  In fact,

the *Lamps Plus* opinion cites cases dating back as far as 1985 when discussing the "foundational

FAA principle" that consent to arbitration is required.[33]  While Dodson argues that the arbitration

agreement at issue here narrowly pertains only to claims related to "maintenance performed" by

Williams, and that Dodson did not consent to the arbitration of its claims involving

---

[26] *Turner v. Nat'l Council of State Bds. of Nursing*, No. 11-2059-KHV, 2013 WL 139750, at *2 (D. Kan. Jan. 10, 2013) (citing *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 370 F. Supp. 2d 1130, 1132 (D. Kan. 2005)).

[27] *Coffeyville Res. Ref. & Mktg., LLC*, 748 F. Supp. 2d at 1264 (citing *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

[28] 139 S. Ct. 1407 (2019).

[29] *Id.* at 1415 (emphasis added) (citing *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)).

[30] *Id.* (citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018); *Stolt-Nielsen*, 559 U.S. at 686–87).

[31] *Id.*

[32] Doc. 64 at 9.

[33] *Lamps Plus*, 139 S. Ct. at 1415 (collecting cases).

10

"misrepresentation, conversion, tortious interference, antitrust or declaratory judgment," these arguments merely rehash issues the Court has already decided without citation to a change in the controlling law.[34]

As to the remaining two grounds for reconsideration under Rule 7.3(b), Dodson does not point to newly available evidence, but does contend that the Court must reconsider its prior Order to prevent manifest injustice. Specifically, Dodson argues that the Court must reverse its Order compelling arbitration because the arbitration proceeding was fundamentally unfair, and because Williams is now moving to dismiss this action on the basis of res judicata based on the arbitration outcome. This argument goes to Dodson's request that the Court vacate or modify the Award, addressed below, not to the question of whether the Court should have compelled arbitration in the first place. Dodson's motion for reconsideration is denied as untimely and without merit under Rule 7.3(b).[35]

## III.   Williams's Request for Confirmation and Dodson's Motion for Vacatur or Modification of Arbitral Award

### A.   Williams's Motion for Leave to File a Sur-Reply

Williams seeks leave to file a sur-reply to Dodson's reply in support of its motion to vacate or modify. "Under D. Kan. Rule 7.1(c), briefing on motions is limited to the motion (with memorandum in support), a response, and a reply. Surreplies are not typically allowed."[36]

---

[34] *See* Doc. 19 at 15–17.

[35] Nor has Dodson justified relief under either Rule 60(b) or 59(e). "Fed. R. Civ. P. 59(e) and D. Kan. Rule 7.3(b) contain essentially the same grounds justifying an alteration, amendment, or reconsideration of an order." *Walter v. Mark Travel Corp.*, No. 09-1019-EFM, 2013 WL 5276143, at *5 (D. Kan. Sept. 18, 2013) (citations omitted). As set forth above, Dodson has not satisfied any of those criteria. Further, the Tenth Circuit holds that while "[a] district court has discretion to grant relief as justice requires under Rule 60(b), . . . such relief is 'extraordinary and may only be granted in exceptional circumstances.'" *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000). Dodson has not identified one of the exceptional circumstances provided as grounds for relief from judgment under Rule 60(b).

[36] *COPE v. Kan. State Bd. of Educ.*, 71 F. Supp. 3d 1233, 1238 (D. Kan. 2014) (citation omitted).

"Leave to file a surreply is generally only granted in 'rare circumstances' such as where the movant 'improperly raises new arguments in a reply.'"[37]  "Such rules are not only fair and reasonable, but they assist the court in defining when briefed matters are finally submitted and in minimizing the battles over which side should have the last word."[38]

The Court finds that Williams's proposed sur-reply largely does not respond to "new material."  Rather, the proposed sur-reply elaborates upon arguments Williams made in its opposition and addresses Dodson's response thereto.[39]  Further, as set forth herein, the Court need not decide whether Dodson's motion to vacate or modify was timely, or consider Dodson's one-line request for remand and a jury trial, because the Court finds that Dodson has not shown a basis for either vacatur or modification of the arbitral Award or reconsideration of the Court's initial Order compelling arbitration.  Williams therefore need not further address these points.

Finally, although Williams titles its motion for leave to file a sur-reply as "unopposed," the motion actually states that Dodson's counsel advised, "I don't object as long as we have the opportunity to Reply to the Sur-reply."[40]  The parties have already unnecessarily multiplied and complicated these proceedings.  Thus, the Court denies Williams's motion for leave to file a sur-reply for lack of good cause and in the interests of efficiency and finality.

---

[37] *Sheldon v. Vermonty*, No. 98-2277-JWL, 2000 WL 33911222, at *3 (D. Kan. Sept. 27, 2000) (quoting *Pehr v. Rubbermaid, Inc.*, 87 F. Supp. 2d 1222, 1236 (D. Kan. 2000)), *aff'd*, 269 F.3d 1202 (10th Cir. 2001); *see also COPE*, 71 F. Supp. 3d at 1238.

[38] *Sheldon*, 2000 WL 33911222, at *3 (quoting *McShares, Inc. v. Barry*, 997 F. Supp. 1338, 1341 (D. Kan. 1997)).

[39] *See, e.g., COPE*, 71 F. Supp. 3d at 1238–40.

[40] Doc. 62 at 1.

**B.      Construction of Williams's Opposition to Motion to Vacate or Modify as Request for Confirmation of Award**

While Dodson has filed a motion to vacate or modify the Award under 9 U.S.C. §§ 10 and 11, Williams has not filed a separate motion to confirm.  Rather, Williams seeks confirmation in its response to Dodson's motion to vacate—in which it addresses Dodson's arguments under §§ 10 and 11—*and* it has filed a motion to dismiss this action on the basis of res judicata and/or improper venue.[41]  In both its motion to dismiss and its opposition to Dodson's motion to vacate or modify, Williams argues that Dodson is time-barred from seeking review of the Arbitrator's Award, which fully resolved the dispute between the parties.

"[F]ederal courts have been understandably liberal in their view on what types of motions, filings or pleadings will be construed to be the equivalent of a motion to confirm," and "no magic words are required by the confirmation provisions of 9 U.S.C. § 9."[42]  In many respects, [motions to vacate and motions to confirm] analytically are the opposite sides of the same coin,"[43]  and "when a court denies a motion to vacate an arbitration award, the court's judgment has the effect of collateral estoppel; the parties cannot relitigate the validity of the

---

[41] *See* Doc. 58 at 1 ("Pursuant to § 9 of the FAA, the Court should confirm the Award."); 25 ("[T]he Court is warranted in denying Dodson's Motion to Vacate and in confirming the Award.").

[42] *Gen. Elec. Co. v. Anson Stamping Co.*, 426 F. Supp. 2d 579, 592, 595 (W.D. Ky. 2006) (finding that prevailing party's motion to dismiss opposing party's motion to vacate arbitral award was practical equivalent of motion to confirm for purposes of statute of limitations); *see also, e.g., Milan Express Co. v. Applied Underwriters Captive Risk Assurance Co*., 672 F. App'x 553, 556 (6th Cir. 2016) ("A court's denial of a motion to vacate an award is often treated as equivalent to an order confirming the award.") (citing *Gen. Elec. Co*., 426 F. Supp. 2d at 591–95)); *Urban Assocs., Inc. v. Standex Elecs., Inc*., No. 04-CV-40059, 2012 WL 12930958, at *2 (E.D. Mich. Aug. 20, 2012) (finding that "Defendants' own responding brief to Plaintiff's motion to vacate constituted a request that the Court confirm the Final Award").

[43] *Gen. Elec. Co.*, 426 F. Supp. 2d at 592.

award."[44]  "It is therefore sensible for the court to treat a party's opposition to a motion to vacate as a request to confirm the award."[45]

Williams and Dodson have both briefed whether there is a basis for vacatur or modification here and, as discussed below, in the absence of grounds for vacatur or modification, the Award must be confirmed.  Requiring the filing of yet another pleading in this already over-litigated case would serve no purpose but delay.  In the interests of judicial economy and to promote "the fundamental policy of the FAA for the speedy and efficient resolution of arbitration disputes," the Court construes Williams's opposition to Dodson's motion to vacate or modify as a request to confirm the Award.[46]

## C.     Standard of Review

The FAA expresses a federal policy favoring arbitration,[47] and "'[b]ecause a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings,' the 'judicial review of an arbitration award is very narrowly limited.'"[48]  The Court "must give extreme deference" to the arbitrator's decision and the standard for the "review of arbitral awards is among the narrowest known to law."[49]  "Given this limited review, [courts] should 'exercise "great caution" when a party asks for an arbitration award to be set aside' or modified."[50]

---

[44] *Sanluis Devs., LLC v. CCP Sanluis, LLC*, 556 F. Supp. 2d 329, 333 (S.D.N.Y. 2008) (citing *Brown v. Bridgeport Rolling Mills Co.*, 245 F. Supp. 41, 45 (D. Conn. 1965)).

[45] *Id.*

[46] *Gen. Elec. Co.*, 426 F. Supp. 2d at 600.

[47]*Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001).

[48] *Sheldon v. Vermonty*, No. 98-2277-JWL, 2000 WL 33911222, at *2 (D. Kan. Sept. 27, 2000) (quoting *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995)), *aff'd*, 269 F.3d 1202 (10th Cir. 2001).

[49] *Mid Atl. Corp. v. Bien*, 956 F.3d 1182, 1189 (10th Cir. 2020) (quoting *THI of N.M. at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1083 (10th Cir. 2017)); *see also Bowen*, 254 F.3d at 935.

[50] *Mid Atl. Corp. v. Bien*, 956 F.3d at 1189 (quoting *THI of N.M. at Vida Encantada, LLC*, 864 F.3d at 1083).

14

"Indeed, '[o]nce an arbitration award is entered, the finality of the arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances.'"[51]

A court may vacate an arbitration award only on limited grounds.[52]  Under § 10(a) of the FAA, a court may vacate an arbitration award on the following bases:

> (1)  where the award was procured by corruption, fraud, or undue means;
>
> (2)  where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[53]

Additionally, the Tenth Circuit has recognized a few non-statutory grounds on which to vacate an arbitration award.[54]  Relevant here, these grounds include manifest disregard of the law.[55]  "Errors in either the arbitrator's factual findings or his interpretation of the law (unless

---

[51] *Id.* (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla.*, 636 F.3d 562, 567 (10th Cir. 2010)).

[52] *See Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005).

[53] 9 U.S.C. § 10(a)(1)–(4).

[54] *Denver & Rio Grande W. Ry. Co. v. Union Pac. Ry. Co.*, 119 F.3d 847, 849 (10th Cir. 1997); *United States ex rel. Nat'l Roofing Servs., Inc. v. Lovering-Johnson, Inc.*, 53 F. Supp. 2d 1142, 1144–45 (D. Kan. 1999).

[55] *See Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (citing *Denver & Rio Grande W. Ry. Co.*, 119 F.3d at 849).  In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the Supreme Court held "that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification" of an arbital award.  552 U.S. 576, 584 (2008).  The continued viability of the "manifest disregard of the law" ground for vacatur is uncertain following the Supreme Court's ruling in *Hall Street*.  *See, e.g. THI of N.M. at Vida Encantada, LLC*, 864 F.3d at 1085 n.1.  In *Abbott v. Law Office of Patrick J. Mulligan*, the Tenth Circuit "declined to modify its precedent to conclude that an arbitrator who manifestly disregards the law exceeds his power under § 10 and declined to expressly abandon 'manifest disregard' entirely, concluding that it was not necessary to come to grips with the issue as the case before it did not present the 'exceedingly narrow circumstances supporting a vacatur based on manifest disregard of the law.'" *Bartlett Grain Co., L.P. v. Sunburst Farms P'ship*, No. 13-1152-JWL, 2013 WL 3366277, at *3 (D. Kan. July 5, 2013) (citing *Abbott v. Law Office of Patrick J. Mulligan*, 440 F. App'x 612, 619−20 (10th Cir.

that interpretation shows a manifest disregard of controlling law) do not justify review or reversal on the merits of the controversy."[56] ‼

Under § 11 of the FAA, a court may modify an arbitration award on the following grounds:

> (a)  Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b)  Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c)  Where the award is imperfect in matter of form not affecting the merits of the controversy.[57]

The district court's "order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties."[58]

The party seeking to vacate or modify an arbitral award bears the burden of establishing a basis for relief under either § 10 or § 11, and "[i]f the party cannot carry this burden, '[i]t [will] not [be] enough . . . to show that the [arbitrator] committed an error—or even a serious error.'"[59] The FAA requires that "[i]f an arbitration award cannot be vacated pursuant to 9 U.S.C. § 10, or modified pursuant to 9 U.S.C. § 11, it *must* be confirmed pursuant to 9 U.S.C. § 9."[60]

---

2011)).  As in *Abbott*, the Court here need not decide whether the "manifest disregard" standard survives *Hall Street* because even if it does, Dodson has not shown that vacatur on that basis would be proper, as discussed below.

[56] *Denver & Rio Grande W. Ry. Co.*, 119 F.3d at 849.

[57] 9 U.S.C. § 11(a)–(c).

[58] 9 U.S.C. § 11.

[59] *Mid Atl. Corp. v. Bien*, 956 F.3d 1182, 1189 (10th Cir. 2020) (final alternation added) (citation omitted) (quoting *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)).

[60] *Denver & Rio Grande W. Ry. Co. v. Union Pac. Ry. Co.*, 868 F. Supp. 1244, 1252 (D. Kan. 1994) (emphasis added) (citing *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 707–08 (2d Cir. 1985)), *aff'd*, 119 F.3d 847 (10th Cir. 1997); *see also Mid Atl. Corp.*, 956 F.3d at 1194 ("Section 9 'unequivocally' commands that courts '"must" confirm an arbitration award "unless" it is vacated, modified, or corrected.'") (quoting *Hall St. Assocs., L.L.C.*, 552 U.S. at 582)).

Finally, under § 12, "[t]he FAA requires notice of a motion to vacate, modify, or correct an arbitration award to 'be served upon the adverse party or his attorney within three months after the award is filed or delivered.'"[61]  "'A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award.'"[62]

### D.    Discussion

As an initial matter, although Dodson acknowledges "that a typical challenge to an arbitrator's award does not involve consideration of the record relating to factual findings," it argues that such consideration is nonetheless required here due to the complexity of the case, and that an evidentiary hearing is necessary "[b]ecause of the volume of findings that Dodson alleges are contrary to the record and need to be placed in context."[63]  However,

> [b]ecause the parties have contracted to have disputes settled by
> an arbitrator chosen by them rather than by a judge, it is
> the arbitrators' view of the facts . . . that they have agreed to accept.
> Courts thus do not sit to hear claims of factual or legal error by
> an arbitrator as an appellate court does in reviewing decisions of lower
> courts.[64]

Therefore, and as further addressed below, the Court rejects Dodson's invitation to reconsider the Arbitrator's findings of fact.  The Court also declines to hold a hearing on the motions before

---

[61] *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158 (10th Cir. 2007) (quoting 9 U.S.C. § 12).

[62] *Id.* (quoting *Int'l Bhd. of Elec. Workers, Local Union No. 969 v. Babcock & Wilcox*, 826 F.2d 962, 966 (10th Cir. 1987)).

[63] Doc. 55 at 2.

[64] *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 935 n.5 (10th Cir. 2001) (quoting *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987)); *see also Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (stating that "[e]rrors in either the arbitrator's factual findings or his interpretation[s] of the law . . . do not justify review or reversal. . . .") (alteration in original) (quoting *Denver & Rio Grande W. Ry. Co. v. Union Pac. Ry. Co.*, 119 F.3d 847, 849 (10th Cir. 1997))).

it.  The parties have briefed the issues extensively—in some cases multiple times—and the Court

finds a hearing unnecessary.

### 1.    Subject Matter Jurisdiction and Venue

Dodson questions the Court's jurisdiction to confirm the Award and Williams argues that

the Court should dismiss this action due to improper venue.  The Court therefore begins its

analysis by explaining why it has subject matter jurisdiction and is a proper venue to decide the

parties' competing requests for vacatur or modification versus confirmation of the Award.

"In arbitration confirmation cases [under the FAA],  . . . the jurisdictional inquiry is

twofold."[65]  "First, because the FAA 'does not create any independent federal-question

jurisdiction,' 'there must be diversity of citizenship or some other independent basis for federal

jurisdiction' before a federal court can act under the FAA."[66]  "Second, § 9 of the FAA, which

authorizes confirmation of awards under certain circumstances, 'creates its own level of subject

matter jurisdiction for confirmation under the FAA.'"[67]

Section 9 of the FAA provides, in relevant part:

> If the parties in their agreement have agreed that a judgment of the
> court shall be entered upon the award made pursuant to the
> arbitration, and shall specify the court, then at any time within one
> year after the award is made any party to the arbitration may apply
> to the court so specified for an order confirming the award, and
> thereupon the court must grant such an order unless the award is
> vacated, modified, or corrected as prescribed in sections 10 and 11
> of this title.  If no court is specified in the agreement of the parties,
> then such application may be made to the United States court in
> and for the district within which such award was made.[68]

---

[65] *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999).

[66] *Id*. (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 25 n.32 (1983)) (citing *Okla. City Assocs. v. Wal-Mart Stores, Inc*., 923 F.2d 791, 793 (10th Cir. 1991)).

[67] *Id*. (quoting *Okla. City Assocs*., 923 F.2d at 793).

[68] 9 U.S.C. § 9.

Thus, a federal district court acting under the FAA must first determine whether it has a basis for federal jurisdiction over the parties, and before confirming an award, must determine whether judicial confirmation is authorized by the parties' agreement.[69]

Although the Eastern District of Michigan (the district within which the Award was made) dismissed the action Williams filed there for lack of subject matter jurisdiction, this Court is satisfied that it maintains jurisdiction.  Dodson, like Williams in the Michigan action, did not adequately plead diversity jurisdiction under § 1332 in its original Complaint in this case because it failed to allege facts showing complete diversity of citizenship.[70]  However, the Court finds that at minimum it has federal question jurisdiction under § 1331 based on the federal causes of action asserted by Dodson in the underlying Complaint, specifically claims arising under the Sherman and Clayton Acts.[71]

As to the second prong of the jurisdictional inquiry, Dodson contends that it has not consented to the entry of judgment confirming the Award.  However, even where the parties have not expressly specified in their agreement that a judgment of the court shall be entered upon the award, as in this case,

> courts have . . . held that parties who agree that their arbitration shall be governed by the rules of the [American Arbitration Association] have implicitly consented to judicial confirmation, because [AAA Rule 52(c)] states that "[p]arties to [an arbitration under] these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."[72]

---

[69] *See P & P Indus., Inc.*, 179 F.3d at 866.

[70] If a business is a limited liability company—like Williams—its citizenship is determined by the citizenship of each one of its members.  *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015).  Dodson did not plead the citizenship of each of Williams's members.  *See* Doc. 1 ¶¶ 1, 6.

[71] *See, e.g.*, *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 n.4 (10th Cir. 2004) (noting that district court had jurisdiction to compel arbitration because plaintiff's complaint was based in part on federal statutes).

[72] *P & P Indus., Inc.*, 179 F.3d at 867 (third alteration in original) (citing *McKee v. Home Buyers Warranty Corp.*, 45 F.3d 981, 983–84 & n.3 (5th Cir. 1995); *Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190, 192–94 (4th

The arbitration provision here states that arbitration shall be conducted "in accordance with the rules of the American Arbitration Association,"[73] and the Court therefore finds that the parties have consented to the entry of judgment on the Award.

As to venue, the "venue provisions" of the FAA are permissive, permitting  "a motion to confirm, vacate, or modify an arbitration award to be brought . . . either where the award was made or in any district proper under the general venue statute."[74]  Thus, "authority under the FAA to confirm or vacate arbitration awards is not limited to the district court where the award was made."[75]  Rather, "the FAA's venue provisions are discretionary, not mandatory,"[76] and "do not supplant the general venue provisions of 28 U.S.C. § 1391(a)."[77]

Williams argues in its motion to dismiss that it has not waived its venue objection and that the Court should dismiss this case for improper venue.  However, not only is Williams's venue argument at odds with its request that the Court confirm the arbitration Award, but

> venue under § 1391(b) "is not limited to the district with the most substantial events or omissions."  Section 1391(b)(2) "instead 'contemplates that venue can be appropriate in more than one district . . . [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts.'"[78]

---

Cir. 1991); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272–73 (7th Cir. 1976)); *see also Cessna Aircraft Co. v. Avcorp Indus., Inc.*, 943 F. Supp. 2d 1191, 1196 (D. Kan. 2013).  Previously stated elsewhere, the present rule is AAA R-52(c).  *See* Commercial Arbitration Rules & Mediation Procedures (Am. Arb. Assoc., Oct. 1, 2013), https://www.adr.org/sites/default/files/CommercialRules_Web.pdf.

[73] Doc. 10-1 at 8, 10.

[74] *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 195 (2000).

[75] *P & P Indus., Inc.*, 179 F.3d at 870; *see Cortez Byrd Chips, Inc.*, 529 U.S. at 197–204.

[76] *Textile Unltd., Inc. v. A..BMH & Co., Inc.*, 240 F.3d 781, 784 (9th Cir. 2001) (citing *Cortez Byrd Chips, Inc.,* 529 U.S. at 194–96).

[77] *Id.* (citing *Cortez Byrd Chips, Inc.,* 529 U.S. at 198–202).

[78] *Frickey v. Thompson*, 136 F. Supp. 3d 1300, 1312 (D. Kan. 2015) (alteration in original) (citation omitted) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165–66 (10th Cir. 2010)).

This Court is a proper venue under 28 U.S.C. § 1391(b)(2) owing to underlying events that took place in this District.  Most critically, it is well established that "the court with the power to stay the action under § 3 has the further power to confirm any ensuing arbitration award."[79]  Thus, the Court may vacate, modify, or confirm the award at issue here.  The Court denies Williams's motion to dismiss to the extent that it objects to this Court as a proper venue for confirmation, vacatur, or modification of the Award under Rule 12(b)(3).[80]

### 2.   Timeliness of Dodson's Motion to Vacate or Modify

Williams argues that Dodson's motion to vacate or modify the Award must be denied as untimely, and that "without an order vacating [the] Award, § 9 requires confirmation."[81]  The Arbitrator filed and/or delivered her Award on September 24, 2019.  On December 23, 2019, within the FAA § 12 limitation period, Dodson filed its motion to vacate in the Eastern District of Michigan and contemporaneously served Williams with notice via ECF in that case. However, the Eastern District of Michigan case was dismissed without prejudice on January 9, 2020, and Dodson did not refile its motion to vacate in this Court until February 27, 2020. Dodson contends that its service of notice upon Williams in the Michigan action satisfies the statutory requirement, and that in any case, the doctrine of equitable tolling and/or the Kansas Savings Statute, K.S.A. § 60-518, renders its filing in this Court timely.

---

[79] *Cortez Byrd Chips, Inc.*, 529 U.S. at 202; *see also Denver & Rio Grande W. Ry. Co. v. Union Pac. Ry. Co.*, 868 F. Supp. 1244, 1250 (D. Kan. 1994) ("Once a federal court has subject matter jurisdiction over an action, it may confirm an arbitration award even though it was not the district where the award was granted.") (quoting *Smiga v. Dean Witter Reynolds Inc.*, 766 F.2d 698, 706 (2d Cir.1985))), *aff'd*, 119 F.3d 847 (10th Cir. 1997).  A court with venue to confirm an award also has venue to vacate it.  *See P & P Indus., Inc.*, 179 F.3d at 870 n.4 (stating that "courts have treated § 9 and § 10 identically for 'venue' purposes"); *Denver & Rio Grande W. Ry. Co.*, 868 F. Supp. at 1249 ("Despite the difference in the language between § 9 and § 10, courts have held there is no distinction between venue for confirmation and vacation of an arbitration award.").

[80] Because the Court finds no basis for vacatur or modification of the Award as set forth below, and therefore must confirm it as Williams requests, the Court denies Williams's motion to dismiss as moot to the extent that it raises other bases for dismissal under Rule 12(b)(6).

[81] Doc. 58 at 9.

As an initial matter, there is some dispute among courts as to whether the FAA time limitation for a motion to vacate is tolled by the service of *notice* on the opposing party, or only by the *filing* of an actual motion.[82]  The parties have not cited and the Court has not found a Tenth Circuit case directly addressing this question.[83]  However, at least one prior decision from this District emphasizes service of notice as the operative event, holding that where plaintiffs filed a motion to vacate within the three month-period but did not serve it on defendants until several months later, plaintiffs forfeited the right to seek review.[84]  The language of the statute itself "requires that a challenge to an arbitration award '*must be served*' on the adverse party within three months after the award is filed."[85]

Here, Dodson served its initial notice of its motion to vacate in the Eastern District of Michigan District within the 90-day limitation period, and Williams unquestionably had notice of Dodson's intent to challenge the Award.[86]  In any event, the Court ultimately need not decide

---

[82] *See, e.g., Stifel, Nicolaus & Co. v. Stern*, No. SAG-20-0005, 2020 WL 1529021, at *4 (D. Md. Mar. 31, 2020) (noting that while "the FAA expressly provides a deadline for serving, not filing, a motion to vacate . . . some federal courts have interpreted § 12 to supply a deadline for filing, in addition to serving, a motion" and agreeing with that interpretation) (citation omitted)); *Global Gold Min. LLC v. Caldera Res., Inc.*, 941 F. Supp. 2d 374, 384 (S.D.N.Y. 2013) ("By its terms, the statute requires that a party wishing to vacate an award give notice within three months of the vacatur motion; it does not require that the motion itself be served within three months of the challenged award.  Petitioners here had notice that Respondent wished to move to vacate the award within the prescribed time period, and so the Court considers the request timely.") (citation omitted)); *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 571–72 (7th Cir. 2007) ("[W]e clarify now and for purposes of future cases that *service* of a motion to vacate is the act that stops the three-month statute of limitations. Unless and until Congress amends § 12 and makes filing the critical date, we will continue to enforce the plain language of the statute.").

[83] *See, e.g., Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158 (10th Cir. 2007) (noting that plaintiff was required to *serve notice* of his application to vacate the award upon defendant within three months of the date of the decision, but also stating that plaintiff's motion was untimely because he did not *file or serve* it within that time period).

[84] *HomeQuest Mortg. LLC v. HRB Tax Grp., Inc.*, No. 14-CV-2008-DDC-KMH, 2014 WL 3845147, at *5 (D. Kan. Aug. 5, 2014).

[85] *Id.* (emphasis added) (quoting 9 U.S.C. § 12).

[86] Dodson originally filed its motion to vacate in the Eastern District of Michigan because that is the venue in which Williams filed its motion to confirm the Award.  The Court therefore finds somewhat curious Williams's argument that Dodson should have known better than to seek vacatur in Michigan because Sixth Circuit law on that court's lack of subject matter jurisdiction was clear at the time.  *See* Doc. 58 at 6–8.

whether Dodson's December 2019 notice to Williams satisfies the § 12 timing requirement with respect to the motion to vacate in this Court—or whether equitable tolling and/or the Kansas savings statute might apply—because even if assumed timely, Dodson's motion to vacate fails on the merits.[87]

### 3.    Grounds for Vacatur or Modification of Arbitration Award

The Court considers in turn each basis Dodson offers in support of vacatur and/or modification of the Arbitrator's Award.

#### a.    *Misconduct Under § 10(a)(3) by Refusal to Postpone Arbitration and/or to Hear Pertinent and Material Evidence*

First, Dodson argues that the Arbitrator is guilty of misconduct under § 10(a)(3) for proceeding to her decision without waiting for and/or refusing to hear pertinent and material evidence.  During the arbitration proceedings, Dodson requested and the Arbitrator issued discovery subpoenas for witness testimony and documents from third parties.  Relevant here, Dodson sought discovery from Textron Aviation, Inc. ("Textron"), formerly Cessna Aircraft Company and the manufacturer of the jet Dodson purchased, and Triumph Engine Control Systems, Inc. ("TECS"), which Dodson states owns the only FAA Certified Repair Station that is authorized to perform evaluation or repair of the two engine Fuel Delivery units and FADECs installed on the jet at the time of the accident.  When both companies refused to comply with the Arbitrator's discovery subpoenas, Dodson asked this Court to modify its stay order to allow subpoenas to issue out of this District, a request the Court denied.

---

[87] "If [Williams's] timeliness defense called the Court's jurisdiction into question, the Court would, of course, need to address it, and, indeed, could not [decide the merits of Dodson's motion] in the absence of jurisdiction." *Equitas Disability Advocates, LLC v. Daley, Debofsky & Bryant, P.C.*, 177 F. Supp. 3d 197, 218 (D.D.C. 2016) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).  However, the Tenth Circuit has "found no case holding that the filing requirement is jurisdictional in nature," and "view[s] this bar as one in the nature of a statute of limitations."  *Foster v. Turley*, 808 F.2d 38, 41 (10th Cir. 1986).

In February 2019, the Arbitrator issued trial subpoenas directing Textron and TECS to appear before her with documents for video testimony.  Textron did not produce documents or a corporate witness but did produce one requested witness, who had authored a report concerning the aircraft.  TECs produced neither a witness nor documents.

Section 7 of the FAA provides:

> The arbitrators . . . may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. . . . . [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators . . . .[88]

Thus, only the Eastern District of Michigan, not the Arbitrator, had the power to compel the testimony and production of documents Dodson sought.  Accordingly, Dodson sought to compel compliance with the subpoenas in the Eastern District of Michigan, and its motions were referred to a United States magistrate judge in that district for reports and recommendations.

With respect to both Textron and TECS, the magistrate judge issued Reports and Recommendations on June 26, 2019, after the first three weeks of arbitration hearings had already occurred, recommending that Dodson's petitions for relief be denied.  Dodson objected to the Reports and Recommendations, but before a district judge ruled, the Arbitrator proceeded to the final day of hearings on July 30, 2019 and her decision.  Dodson now appears to argue that after the magistrate judge recommended that the requested relief be denied, the Arbitrator committed misconduct by not waiting for decisions from a district court judge in the Eastern District of Michigan on Dodson's objections to the magistrate's Reports and Recommendations

---

[88] 9 U.S.C. § 7.

before proceeding with the final day of hearings and ultimately closing the arbitration in early

September 2019.

"[T]he basic policy behind arbitration . . . is to permit the parties to resolve their disputes

in an expeditious manner without all the formalities and procedures [of] full fledged litigation."[89]

Thus, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the

courtroom for the simplicity, informality, and expedition of arbitration.'"[90]  Although "[a]n

arbitrator 'must grant the parties a fundamentally fair hearing,'" fundamental fairness "requires

only notice, opportunity to be heard and to present relevant and material evidence and argument

before the decision makers, and that the decisionmakers are not infected with bias."[91]

> [Section] 10(a)(3) permits a court to vacate the arbitrator's award
> where the arbitrator refused to postpone a hearing upon sufficient
> cause shown.  Because the primary purpose for the federal policy
> of favoring arbitration is to promote the expeditious resolution of
> disputes, [however,] a court's review of the arbitrator's decision to
> postpone or not postpone the hearing is quite limited.[92]

Courts in this circuit have applied an abuse-of-discretion standard in determining whether

an arbitrator committed misconduct by declining to postpone arbitration proceedings.[93]  "The

determination of whether a denial of a request for a continuance constitutes an abuse of

---

[89] *Himark Biogas, Inc. v. W. Plains Energy LLC*, No. 14-1070-SAC, 2016 WL 1312756, at *3 (D. Kan. Apr. 4, 2016) (first alteration added) (citing *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1016 (11th Cir. 1998), *overruled on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)).

[90] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 437 U.S. 614, 628 (1985)).

[91] *Bad Ass Coffee Co. of Haw. v. Bad Ass Coffee Ltd. P'ship*, 25 F. App'x 738, 743 (10th Cir. 2001) (quoting *Bowles Fin. Grp., Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1012–13 (10th Cir. 1994)).

[92] *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) (citing *Raiford v. Merrill Lynch, Pierce, Fenner & Smith*, 903 F.2d 1410, 1413 (11th Cir. 1990); *Fairfield & Co. v. Richmond, F. & P. Ry. Co.*, 516 F. Supp. 1305, 1313–14 (D.D.C. 1981)).

[93] *See, e.g., ARW Expl. Corp.*, 45 F.3d at 1464 (stating that "the arbitrator was clearly acting within the scope of his discretion in not continuing the hearing"); *Himark Biogas, Inc.*, 2016 WL 1312756, at *3 ("It is difficult to imagine that an arbitration panel could be 'guilty of misconduct' if its refusal to grant a requested postponement did not amount to an abuse of discretion.") (citation omitted)); *Loda Okla, LLC v. Overall*, No. 13-CV-191-GKF-FHM, 2015 WL 1467825, at *4 (N.D. Okla. Mar. 30, 2015) (same).

discretion 'turns largely upon the circumstances of the individual case.'"[94]   The relevant factors
to be considered include:

> the diligence of the party requesting the continuance; the
> likelihood that the continuance, if granted, would accomplish the
> purpose underlying the party's expressed need for the continuance;
> the inconvenience to the opposing party, its witnesses, and the
> [panel] resulting from the continuance; the need asserted for the
> continuance and the harm that appellant might suffer as a result of
> the [panel's] denial of the continuance. . . .  No single factor is
> determinative and the weight given to any one may vary depending
> on the extent of the [respondents'] showing on the others.[95]

"An abuse of discretion, moreover, does not require vacation of the arbitral award if the abuse
was harmless error; the party alleging abuse of discretion must prove prejudice."[96]   Dodson
simply has not provided information or argument sufficient for the Court to find an abuse of
discretion here amounting to misconduct under § 10(a)(3), let alone prejudice.

As to Textron, Dodson argues that discovery from this non-party was essential to its
claims because the information sought is "material and relevant" to a long list of issues in the
case, most of which relate to the inspection and repair of engines that have been through a heavy
landing accident, entities qualified to make such repairs, information needed to make repairs, the
costs of repairs, and communications between Williams and Textron relating to these topics.  As
to TECS, Dodson claims that it needed the discovery sought because it was material and relevant
to whether Williams interfered in Dodson's request that TECS evaluate the engine components
and to whether the components were repairable or airworthy.

---

[94] *Loda Okla*, 2015 WL 1467825, at *4 (quoting *Rogers v. Andrus Transp. Servs.*, 502 F.3d 1147, 1151 (10th Cir. 2007)).

[95] *Id*. (alteration in original) (quoting *Rogers*, 502 F.3d at 1151).

[96] *Id*. (citing *Clark v. Tansy*, 13 F.3d 1407, 1411 (10th Cir. 1993)).

In her Pre-Hearing Order No. 14, however, the Arbitrator explained:

> Williams [sic] counsel disputes [Dodson's] request that the
> arbitration be indefinitely delayed in pursuit of the Textron and
> Triumph testimony, which the Magistrate Judge has already denied
> and, in theory, the appeals of that denial could go on indefinitely.
> Mr. Warr points out that Dodson already questioned Mr. Asensio
> [of Textron] for the hearing regarding his crash investigation and
> report.  As for Triumph, Mr. Warr points out that Dodson failed to
> pay Triumph to test the FADECS.   Nor has it shown how the
> testimony from either Textron or Triumph would materially
> advance the issues that this arbitrator needs to decide.  I find that
> the possibly slight value of such testimony is far outweighed by the
> interest in bringing this matter to a conclusion.  Thus, we will not
> put the final testimony on hold while waiting for the possibility of
> additional testimony from Textron or testimony from Triumph.[97]

In her Award, the Arbitrator further stated that she had decided not to "postpone rebuttal

testimony while waiting for the *possibility* of a reversal by the District Court of the Magistrate

Judge's Report and Recommendations," and that "Dodson and Williams have had a fair

opportunity to present their respective cases, and the Arbitrator has sufficient information with

which to decide the dispute."[98]

As the party seeking vacatur, Dodson bears the burden of establishing misconduct under

§ 10(a)(3).  However, Dodson does not provide any legal analysis under that section, nor does it

contextualize the discovery it sought in relation to any particular claim or explain exactly how

the Arbitrator's decision to proceed before ruling out the availability of the testimony and

documents sought from third parties amounted to an abuse of discretion resulting in the lack of a

fundamentally fair hearing and actual prejudice.  Instead, Dodson merely asserts that the

information sought was material and relevant, quotes various excerpts from the Arbitrator's

findings at length, and claims that it had no opportunity to refute certain findings regarding

---

[97] Doc. 58, Ex. 11 at 3.

[98] Doc. 53, Ex. 1 at 14 (emphasis added).

Textron and TECS without the discovery it sought, largely leaving the Court to piece together its argument for it.

For example, the Textron crash investigator who did testify during the arbitration stated that the Cessna aircraft at issue did not have a device to measure G-force experienced during a crash, and that Cessna did not reach a conclusion about the amount of G-force imparted during the crash in Brazil.[99]  Dodson's expert conceded that he did not know the G-force necessary to impart the type of damage sustained by the aircraft,[100] and an FAA witness corroborated Williams's position regarding the impact of unknown G-force on its ability to repair the engines.[101]  Thus, Williams argues, "[e]ven if Dodson had evidence from Textron regarding the G-force load limits on the aircraft, it would not have proved Williams's decision to scrap the engines was legally unjustified.  Without knowing the extent of potential damage to the engine's components, Williams had to scrap them."[102]  In its briefing, Dodson fails to explain why it needed the additional evidence sought.

As another example, this time relevant to the evidence Dodson sought from TECS, the arbitrator found that "Williams and Dodson entered a stipulation that would have allowed Dodson to pay TECS to test the FADECs.  Although Williams sent the FADECs to TECS, Dodson never commissioned or paid for that testing. . . ."[103]  Further, the Arbitrator found that "testing the FDACS would not have proved airworthiness" in any case.[104]  Again, Dodson does not show why the evidence it sought was essential to a fundamentally fair hearing and why the

---

[99] *See id.* at 17.

[100] *See id.* at 34.

[101] *See id.* at 39.

[102] Doc. 58 at 15.

[103] Doc. 53, Ex. 1 at 29 n.26.

[104] *Id.* at 29.

Arbitrator's decision to proceed without it resulted in prejudice.  It is not the Court's role to make arguments for Dodson, and it declines to do so here.

Dodson also contends that the Arbitrator committed misconduct in denying a motion to compel Williams to produce information relating to the addition of a particular statement to Williams's FJ44-3A Engine Manual, and in proceeding to her decision without ever ruling on Dodson's motion to compel Williams to produce information regarding whether two 16-blade fan rotors could be repaired.

As to the revision to the engine manual, Dodson argues that it needed information relating to the addition of the following statement in 2007:

> These instructions are written to return engines and hardware to service when used in normal operations.  Aircraft accidents/incidents induce additional investigation requirements which are not covered in these instructions.  For WI policy involving engines that were installed on an aircraft that experienced an accident/incident please contact Williams International Product Support.[105]

Dodson contends that it needed discovery regarding the foregoing statement, which was added to the manual six years *before* Dodson purchased the aircraft at issue, because the statement "gave Williams the alleged support for claiming that its manuals do not include information for engines that have been involved in an aircraft accident or incident," and that "the entirety of the claimed change is relevant and material to the authority of the Williams Repair Station to perform the evaluation requested by Dodson."[106]  As to discovery on the fan rotors, Dodson claims "it was needed by Dodson's engine expert to rebut the unsupported testimony of Paul Macala [sic],

---

[105] Doc. 55 at 14.

[106] *Id.* at 15.

Williams [sic] Chief FJ44 engineer relating to the repairability and cost of repair for the FAN

ROTORS."[107]

However, in response to Dodson's request to reopen discovery before the final rebuttal

hearing, the Arbitrator found:

> In view of the substantial evidence that the Engine Manual *must* be
> followed; the history of *why* the Engine Manual reflects certain
> provisions is not relevant to the ultimate question regarding the
> appropriate disposition of the subject engines.  Mr. Machala's
> testimony on engine stalls was simply to provide an explanation as
> to why there are manual limits to fan rotors.  It really takes matters
> too far to second guess that explanation with evidence in
> rebuttal.[108]

The Arbitrator also found in her Award that Dodson's own expert contradicted Dodson's claim

that both fan rotors were repairable, and that Williams prematurely rejected them, when the

expert acknowledged: (1) that Williams can refuse to return a part to service if it cannot

determine whether it is safe for operation; and (2) that he had no reasons to dispute that Williams

followed its ICA when it determined that neither fan blade was repairable.[109]

After more than two years of arbitration, the Arbitrator plainly found that the evidence

Dodson sought was cumulative and/or of questionable materiality or utility, such that the

interests of efficiency and finality weighed in favor of proceeding without it.  "Arbitrators

generally are not bound by the rules of evidence, but possess broad latitude to determine the

procedures governing their proceedings, to hear or not hear additional evidence, to decide what

evidence is relevant, material or cumulative, and otherwise to restrict the scope of evidentiary

---

[107] *Id.*

[108] Doc. 58, Ex. 11 at 4.

[109] Doc. 53, Ex. 1 at 22.

submissions."[110]  In other words, "[a]n [arbitrator] has broad discretion as to whether to hear evidence at all and need not compromise speed and efficiency, the very goals of arbitration, by allowing cumulative evidence.  What is required is that each party be given an opportunity to present its evidence and argument."[111]  Thus, "[e]very failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award."[112]  Rather, "[e]ven if the arbitrator erroneously excluded material evidence, [the court] will not vacate the award unless the error deprived a party of a fundamentally fair hearing."[113]

Dodson has not met its burden to show that the Arbitrator's decision to proceed with the final rebuttal hearing and to her Award before rulings from the Eastern District of Michigan on Dodson's motions to compel, and/or her decision not to order Williams to produce the additional discovery Dodson sought, amounts to misconduct under § 10(a)(3).  Again, beyond stating that the evidence it sought was relevant and material, Dodson makes little effort to show *how* the omission of the testimony and documents in question resulted in prejudice or deprived it of a fundamentally fair hearing.  Thus, the Court can find no misconduct under § 10(a)(3).  Rather, it was within the Arbitrator's discretion to determine that the evidence Dodson sought was

---

[110] *Commercial Risk Reins. Co. v. Sec. Ins. Co. of Hartford*, 526 F. Supp. 2d 424, 428 (S.D.N.Y. 2007) (citation omitted).

[111] *Max Marx Color & Chem. Co. Emps. Profit Sharing Plan v. Barnes*, 37 F. Supp. 2d 248, 251 (S.D.N.Y. 1999) (citations omitted); *see also, e.g.*, *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) ("An arbitration award must not be set aside for the arbitrator's refusal to hear evidence that is cumulative . . . or irrelevant . . . .  Vacatur is appropriate only when the exclusion of relevant evidence 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.'") (citations omitted)); *Nat'l Post Office Mailhandlers Watchmen, Messengers & Grp. Leaders Div., Laborers Int'l Union of N. Am., AFL-CIO v. United States Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985) (noting arbitrators have discretion to prohibit cumulative testimony).

[112] *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 818 (D.D.C. 2007) (quoting *Hoteles Condado Beach*, 763 F.2d at 40) (citing *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir. 1992)).

[113] *Bad Ass Coffee Co. of Haw. v. Bad Ass Coffee Ltd. P'ship*, 25 F. App'x 738, 743 (10th Cir. 2001) (citing 9 U.S.C. § 10(a)(3)); *see also Lessin*, 481 F.3d at 818.

cumulative, of limited utility, and/or would not materially affect the outcome of the issues before her.

        **b.**    **Evident Partiality and/or Misconduct Under § 10(a)(2) and (3) by Acceptance of Williams's Unsupported Witness Testimony and by Adoption of Williams's Proposed Findings of Fact and Conclusions of Law**

Dodson contends that the Arbitrator's "wholesale acceptance" of Williams's unsupported witness testimony about positions held by the FAA and Textron, the condition of Engine 141386's component parts and accessories, and the cost to develop component repairs—and her "wholesale adoption" of Williams's proposed findings of fact and conclusions of law—is evidence of her partiality and/or misconduct under § 10(a)(2) and (3).  In so arguing, Dodson incorporates its arguments relating to the Arbitrator's failure to hear the evidence discussed above, which the Court need not further address.  Dodson also argues that the Arbitrator demonstrated impartiality by basing her findings on the testimony of Williams's Senior Vice President, Frank Smith, regarding Williams's compliance with FARs.

Dodson argues that 14 C.F.R. § 43.3 precludes Williams's corporate employees—as opposed to Repair Station engineers—from repairing engines in the aftermarket, yet Williams based its ultimate decision not to repair the engines at issue on the opinions of corporate executives who viewed video of the jet accident some months after Repair Station employees provided repair estimates.[114]  Dodson contends that the Repair Station employees identified only one issue regarding the 16-blade fan rotor, and that otherwise, "substantially all" of the engine components were to be reinstalled.[115]  Additionally, or alternatively, Dodson seems to argue that the Williams Repair Station should not have undertaken the task of evaluating Dodson's engines

---

[114] Doc. 55 at 16–17.

[115] *Id.* at 17.

if, as Williams claims, the engine manual does not provide information allowing for evaluation of engines that have been involved in an accident.

First, although Dodson contends that the Arbitrator ignored the fact that 14 C.F.R. § 43.3 "preludes Williams the manufacturer from performing engine maintenance,"[116] it provides no analysis that would allow this Court to find an error in the Arbitrator's legal interpretation.  Even if the Arbitrator got the law wrong, which Dodson has not established, the Court "may not second-guess the arbitrator's decision, even if the court believes that the law has not been applied correctly."[117]

> The burden of proving that an arbitrator acted in manifest disregard of the law is high and requires more than a mere mistake of law. The Tenth Circuit has interpreted manifest disregard as "willful inattentiveness to the governing law."  "Requiring more than error or misunderstanding of the law, . . . a finding of manifest disregard means the record will show the arbitrators knew the law and explicitly disregarded it."[118]

Although Dodson refers to "manifest disregard" in passing in its memorandum in support, nowhere does it develop this line of argument.

Further, contrary to Dodson's claim that the Arbitrator ignored the meaning of 14 C.F.R. § 43.3, the Arbitrator expressly found that subsection (e) of that regulation authorizes Williams to operate its Repair Station, and credited testimony from FAA officials establishing that it is both common and permissible for an engine manufacturer to hold a repair-station certificate and use employees from "both sides of the house" to assist with inspection and repair.[119]  The

---

[116] *Id.* at 16.

[117] *Blake v. Transcommc'ns Inc.*, No. CIV.A. 01-2073-CM, 2004 WL 955893, at *6 (D. Kan. Feb. 4, 2004) (citing *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir.1995)).

[118] *Id.* (citation omitted) (quoting *ARW Expl. Corp.*, 45 F.3d at 1463) (citing *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir.2001)).

[119] *See* Doc. 53, Ex. 1 at 40, 42–43.

Arbitrator also found that because Williams's Engine Manual does not provide instructions for returning engines and hardware to service after an accident, Williams's Repair Station sought the assistance of Williams's Manufacturing as the Line Maintenance Manual required.  Because Dodson has not articulated how the Arbitrator erred in her interpretation of the law other than by stating that she did, Dodson has certainly has not shown manifest disregard of the law.

At its heart, Dodson's complaint appears to be that the Arbitrator credited Williams's witnesses and arguments over its own.  At the conclusion of the final rebuttal hearing on July 30, 2019, Dodson and Williams agreed to submit proposed findings of fact and conclusions of law to the Arbitrator without copying each other.[120]  Again, Dodson contends that the Arbitrator improperly credited Williams's unsupported witness testimony and that evident partiality is shown by the Arbitrator's "wholesale adoption of Williams [sic] proposed findings of fact and conclusions of law."[121]

A finding of "evident partiality" under § 10(a)(2) requires "evidence of bias or interest of an arbitrator [that is] direct, definite and capable of demonstration rather than remote, uncertain or speculative."[122]  The party seeking vacatur has the burden of showing that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."[123]  Dodson fails to make this showing.

---

[120] *See* Doc. 58, Ex. 10.

[121] Doc. 55 at 15; Doc. 59 at 5.

[122] *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982) (citing *Tamari v. Bache Halsey Stuart, Inc.*, 619 F. 2d 1196 (7th Cir. 1980)).

[123] *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir. 1984).

First, "[i]t is the [arbitrator's] role—not the court's—to assess expert credibility, weigh the evidence, and make findings of fact."[124]  As noted above, any errors in the arbitrator's factual findings do not justify vacatur,[125] and the Tenth Circuit has previously found that the argument that the arbitrator's rulings went "against the clear weight of the evidence" did not meet the definition of "evident partiality" under § 10(a)(2).[126]  Moreover, though it is not this Court's role to examine the factual record, the Arbitrator's award includes rationale for crediting or discrediting certain witnesses' testimony.[127]  As addressed above, beyond asserting that the Arbitrator must have been partial to the Williams based on her findings, Dodson has not shown instances in which the Arbitrator's adoption of a particular fact or conclusion would suggest bias or partiality.

Second, the Court is not convinced by Dodson's assertion that the Arbitrator must not have even considered a significant number of Dodson's proposed findings because she billed only a total of ten hours for the preparation of her findings of fact and conclusions of law.  After the Arbitrator presided over more than two years of arbitration and sixteen days of hearings, this Court is not prepared to assume bias from efficiency and finds this argument too uncertain and speculative to hold water.

---

[124] *Cessna Aircraft Co. v. Avcorp. Indus., Inc.*, 943 F. Supp. 2d 1191, 1198 (D. Kan. 2013); *see also Cohig & Assocs., Inc. v. Stamm*, 149 F.3d 1190 (Table), 1998 WL 339472, at *6 (10th Cir. June 10, 1998) (stating that arbitrator has discretion to view evidence and determine credibility).

[125] *See supra* n.64.

[126] *Legacy Trading Co. v. Hoffman*, 363 F. App'x 633, 635 (10th Cir. 2010).

[127] *See, e.g.*, Doc. 53, Ex. 1 ¶¶ 80, 81, 84, 87, 88, 139, 140, 141.  For example, although Dodson complains that the Arbitrator improperly based certain findings on the unsupported testimony of Williams Senior Vice President Frank Smith, and specifically points to Smith's view of Williams's compliance with FARs pertaining to the availability of Williams's engine manual, Dodson does not acknowledge that the Award contains an entire section discussing this issue that includes citations to FARs, FAA orders, and testimony.  *See id*. at 52−54.

Third, Dodson omits from its briefing that the Arbitrator did not, in fact, completely adopt Williams's findings of fact and conclusions of law.  Rather, the Arbitrator found in favor of Dodson on Williams's counterclaims and request for attorneys' fees.  Although the record in this Court does not contain Williams's proposed findings of fact and conclusions of law, it is plain from the Arbitrator's Award that it is not a wholesale adoption of William's proposal. Further, the Arbitrator allowed Dodson to amend its complaint after Williams filed a dispositive motion, continued the hearing several times to allow Dodson additional discovery, and granted Dodson leave to pursue non-party discovery.[128]  The overall picture painted by the totality of the proceeding is not one of an arbitrator biased in favor of one party over the other.

Finally, Dodson provides no rationale or legal precedent to support that the Arbitrator's partial adoption of Williams's proposed findings of fact and conclusions of law would lead a reasonable person to conclude that she was biased.  In federal courts, "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous."[129]  Under circumstances similar to those here, the Sixth Circuit recently noted that "federal courts are permitted to incorporate language from parties' submissions into their orders,"[130] and that the party seeking vacatur of an arbitral award had offered "no rationale for why such behavior is permissible for courts but not for arbitrators."[131]

---

[128] *See, e.g.*, Doc. 58, Ex. 7; Doc. 58, Ex. 8; Doc. 58, Ex. 9.

[129] *Anderson v. Bessemer City*, 470 U.S. 564, 572 (1985) (citing *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 615 n.13 (1974); *United States v. El Paso Nat. Gas Co.*, 376 U.S. 651, 656–57 (1964)); *see also Tennille v. W. Union Co.*, 785 F.3d 422, 440 (10th Cir. 2015); *Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*, 8 F.3d 1501, 1509–10 (10th Cir. 1993).

[130] *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 604 (6th Cir. 2016) (citing *Kilburn v. United States*, 938 F.2d 666, 672 (6th Cir. 1991)).

[131] *Id.* at 605.

The same is true here, the Court must give extreme deference to the Arbitrator's Award, and Dodson has not met its burden to show that a reasonable person would have to conclude that the Arbitrator was biased in favor of Williams.  Dodson was given an equal opportunity to submit proposed findings and conclusions, and the record here does not suggest that the Arbitrator adopted William's position with an uncritical eye or that her ultimate findings lack support in the record.  Dodson has not shown a basis for vacatur due to partiality or misconduct under § 10(a)(2) or (3).

> ### c.  Arbitrator Failed to Order Return of FJ44-3A Engine 141386 to Dodson

In a one-paragraph argument in its memorandum in support, Dodson contends that Williams has unlawfully retained possession of one of the two engines at issue.  Dodson states that "[i]n light of the Arbitrator's ruling in favor of Dodson concerning storage fees and reassembly, Dodson notified Williams that it would arrange for a truck to pick up the engine, the two FADECs and the FDU," and that "Williams should not be unjustly enriched by retaining control over Dodson's it [sic] and its component parts."[132]

Although Dodson cites §§ 10 and 11 when asserting that the Arbitrator should have ordered Williams to return Engine 141386 to Dodson, it neither relies on a particular subsection of either provision nor makes any legal argument.  In its reply brief, Dodson makes passing reference to the Arbitrator having "exceeded her authority," but again makes no legal argument and cites both §§ 10 and 11.  Thus, it is unclear whether Dodson is asking that the arbitral Award be vacated or modified and on what grounds.

---

[132] Doc. 55 at 18.

In the context of Dodson's conversion claim, the Arbitrator found that Dodson had

abandoned Engine 141386, and the Award states the following:

> Williams informed Dodson it would return engine 141386
> assembled, but not airworthy, to ensure that the unserviceable parts
> do not get into the market and that the engines are not installed and
> operated in an unserviceable condition.  Dodson agreed to accept
> rebuilt engine serial number 141386.  Dodson and Williams
> exchanged multiple emails over many months regarding the
> engines.  Dodson never arranged to have a truck pick up the
> engines from Williams.  Dodson's suggestion that its purchase
> order contained a requirement for Williams to ship the engines
> COD contradicts Mr. Dodson's email that said he would send a
> truck to retrieve the engines.  Mr. Dodson also testified that once
> he engaged in discussions to sell the engines to SkyWay, there was
> no reason to return the engines to Dodson.  On its own volition,
> Dodson decided to leave engine s/n 141386 at Williams.  That
> evidence does not prove the elements of conversion under
> Michigan law.
>
> Williams did not wrongfully exert control of engine s/n 141386 in
> denial of, or inconsistent with, Dodson's rights.  Dodson sold both
> engines to SkyWay in February 2015.  Dodson could not have sold
> the engines to SkyWay if Williams was, at that time, wrongfully
> exerting unauthorized control over them.  Williams informed
> Dodson that engine 141386 was assembled and ready to ship, but
> Dodson never responded and abandoned the engine.  After Dodson
> reacquired 141386 from SkyWay in July 2015, it never asked
> Williams to return that engine.  This evidence supports a finding
> that Dodson abandoned 141386 at Williams. . . .[133]

These findings regarding Dodson's abandonment of the engine played into the Arbitrator's ruling

on Williams's counterclaim for breach of contract.  The Arbitrator found that Dodson was not

required to pay storage fees because Williams never sent final repair quotes per the terms of the

parties' contract, but also that no storage fees were owed because Williams used the reassembled

Engine 141386 in its training room following its abandonment.[134]  Although Dodson contends

---

[133] Doc. 53, Ex. 1 at 76.

[134] *Id*. at 91–92.

that it is *now* ready to send a truck to pick up the engine, it appears that the Arbitrator found at the time of her Award that the engine had been abandoned and that this finding was pivotal to the outcome several claims.

> Dodson makes a two-sentence argument that

>> [t]he Arbitrator exceeded her authority by making unsupported findings concerning whether Dodson had abandoned its engine and by failing to require Williams to return the engine . . . pursuant to Dodson's original Repair Order. . . .  Williams made no claim that it had a right to possess the engine and accessories.[135]

To the extent that Dodson is evoking § 10(a)(4), that section "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract."[136] "Where . . . the arbitrator's decision has '*any*' contractual basis, it should not be overturned under the deferential standard of review afforded to arbitration awards."[137]  "Parties who agree to submit matters to arbitration are presumed to agree that everything, both as to law and fact, necessary to render an ultimate decision is included in the authority of the arbitrators."[138]

The language of the parties' arbitration agreement is broad, stating that "[a]ll disputes arising from or in connection with maintenance performed by Williams International shall be submitted to binding arbitration."[139]  This Court already determined when compelling arbitration that the contract's arbitration clause encompassed all counts alleged in the Complaint. "[O]nce a court interdependently determines the parties agreed to arbitrate an issue, it should give 'extreme

---

[135] Doc. 59 at 5.

[136] *THI of N.M. at Vida Encantada LLC v. Lovato*, 864 F.3d 1080, 1088 (10th Cir. 2017) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572 (2013)).

[137] *Id*. (quoting *Oxford Health Plans LLC*, 569 U.S. at 571).

[138] *Id*. at 1087 (quoting *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1146 (10th Cir. 1982)).

[139] Doc. 10-1 at 8, 10.

deference' to an arbitrator's decision regarding the scope of that issue,"[140] and "the arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits."[141]  Dodson has simply failed to meet its "heavy burden" of showing that the Arbitrator exceeded her authority under the parties' arbitration agreement, nor has it articulated another basis for modification of vacatur of the award with respect to the disposition of Engine 141386.[142]  Dodson's motion to vacate or modify is denied and the Arbitrator's Award is confirmed.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff Dodson's Motion to Reconsider the January 31, 2017 Order Transferring the Case to Arbitration (Doc. 63) is **denied**. Dodson's Motion to Vacate/Modify the Arbitrator's Findings of Fact and Conclusions of Law (Doc. 54) is also **denied**.  Defendant Williams's request that the Arbitrator's Award be confirmed is granted, the Award is **confirmed**, and the Court orders judgment accordingly. Williams's Motion to Dismiss or, Alternatively, Motion to Transfer Venue (Doc. 52) is **denied** under Rule 12(b)(3) and **denied as moot** under Rule 12(b)(6).  Finally, William's Renewed Motion for Leave to File Sur-Reply regarding Dodson's motion to vacate/modify (Doc. 62) is **denied** and Dodson's request for oral argument is **denied**.

**IT IS SO ORDERED.**

---

[140] *Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla*., 636 F.3d 562, 568 (10th Cir. 2010) (quoting *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001)).

[141] *Id*. (quoting *Schoenduve Corp. v. Lucent Techs., Inc*., 442 F.3d 727, 733 (9th Cir. 2006); *Major League Umpires Ass'n v. Am. League of Prof. Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004)).

[142] *Oxford Health Plans LLC*, 569 U.S. at 569.

Dated: June 15, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE